2023 BNH 002
_____

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| In re: | Bk. No. 14-11393-BAH |
| | Chapter 13 |
| Davin LW Pope, | |
|     Debtor | |
| | |
| Davin Pope, | |
|     Plaintiff | |
| | |
| v. | Adv. No. 18-01011-PGC |
| | |
| U.S. Bank, National Association, as Legal Title Trustee for Truman 2012 SC2 Title Trust, and Rushmore Loan Management Services, LLC, | |
|     Defendants | |

**MEMORANDUM OF DECISION ON PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES AND COSTS**

On August 15, 2022, the court entered a Final Judgment (the "Final Judgment") in favor of plaintiff, Davin Pope, on Counts I, II and III of her complaint against U.S. Bank, National Association, as Legal Trustee for Truman 2012 SC2 Title Trust ("U.S. Bank") and Rushmore Loan Management Services, LLC ("Rushmore" and, collectively with U.S. Bank, the "Defendants"). Doc. No. 290.[1] The court awarded Ms. Pope nominal damages of one dollar on Count I (breach of contract against U.S. Bank), no damages on Count II (stay violations against

---

[1] The court amended the Final Judgment on February 15, 2023, to reflect that the August 15, 2022, Memorandum of Decision (Doc. No. 289) awarded nominal damages of one dollar on Count I against U.S. Bank, not Rushmore, as ¶ 1 of the Final Judgment mistakenly stated. Doc. No. 295.

1

U.S. Bank and Rushmore), and $10,000 of damages on Count III (contempt against Rushmore). Doc. No. 295. It also held that Ms. Pope was entitled to an award of attorneys' fees and costs on Count I and Count II. Doc. No. 290. The court directed Ms. Pope to file a motion accompanied by an affidavit containing, *inter alia*, "an itemization of all costs and fees incurred relating to the prosecution of Count I and Count II" so the court could evaluate the appropriateness of a fee award. Id. The court instructed Ms. Pope to attach as an exhibit, "any and all fee arrangements (hourly or contingency) executed by and between Ms. Pope and her counsel." Id.

Ms. Pope filed the "Motion for Attorneys' Fees and Costs" on September 14, 2022 (Doc. No. 293) (the "Fee Motion") seeking fees in the amount of $389,973.00 and costs in the amount of $13,667.80. The Defendants filed a timely objection on October 12, 2022 (Doc. No. 294). After due consideration of the parties' positions and for the reasons set forth below, the court hereby awards Ms. Pope $142,819.00 in fees and $3,663.93 in costs.

### I. Overview of the Fees Billed to Ms. Pope

This litigation spanned four years, and during that period, the lead attorneys, Timothy Chevalier, Esq. and Terrie Harman, Esq. changed firms several times. On February 1, 2017, Ms. Pope signed the "Retainer Agreement for Legal Representation Lawyer Referral Program (Hourly or Modified Contingency Option)" (the "Retention Agreement") pursuant to which she retained Mr. Chevalier, then employed by McCandless & Nicholson, PLLC ("McCandless"), to represent her in connection with this litigation. Doc. No. 293-3.[2] The Retention Agreement gave Ms. Pope the option of paying her legal fees in the ordinary course at Mr. Chevalier's standard hourly rate of $215.00, or pursuant to a contingency fee, defined as the greater of one-third of the sums recovered or the value of the time of Mr. Chevalier at the hourly rate of

---

[2] Mr. Chevalier was already representing Ms. Pope in connection with her chapter 13 case and the terms of that engagement were laid out in a separate retention letter. Doc. No. 293-2.

2

$285.00 and the value of the time of other attorneys and paralegals at their ordinary rates, plus expenses. Ms. Pope chose the contingency fee arrangement.

In October of 2018, Mr. Chevalier joined Harman Law Offices, where he continued to represent Ms. Pope. Mr. Chevalier's standard hourly rate increased from $215.00 to $260.00 but he continued to bill his time on this matter at the rate of $285.00 set forth in the Retention Agreement. At this time, Ms. Harman began to charge time on the matter, as well. Although her hourly rate ranged from $345.00 to $375.00 during this period, she only seeks payment for those services at the hourly rate of $285.00.

On or around April 1, 2019, Mr. Chevalier left Harman Law Offices and opened Chevalier Legal Services, PLLC. Once again, Ms. Pope asked him to continue representing her. Mr. Chevalier's standard hourly rate remained at $260.00 but he continued to bill his time on this matter at the $285.00 hourly rate set forth in the Retention Agreement. Although they were no longer at the same firm, Ms. Harman continued to assist Mr. Chevalier as a mentor and strategic advisor. In May of 2022, Mr. Chevalier's standard hourly rate increased to $275.00 and it remained at that rate through the filing of the Fee Motion.

On or around March 27, 2020, Ms. Harman joined Alfano Law Office, PPLC where she billed her time at the standard hourly rate of $375.00 until November of 2020, at which time her hourly rate increased to $425.00.

**II.     The Appropriate Legal Standard for Reviewing a Request for Fees**

The breach of contract claim (Count I) arises under state law while the automatic stay violation claim (Count II) is premised on federal law. The state and federal standards for determining whether fees and costs are reasonable are substantively similar, however, so there is no need to engage in separate analyses for an award of fees under Counts I and II.

3

When determining a fee award under a federal statute or claim, courts employ the "lodestar" method.  See Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 69 (1st Cir. 2012) (applying lodestar method to fees sought under 11 U.S.C. § 330(a)); In re Little, 484 B.R. 506, 510 (B.A.P. 1st 2013) (lodestar is the appropriate approach in determining reasonable attorney fees under 11 U.S.C. § 330(a)); Northeast Lumber Mfrs. Ass'n v. Northern States Pallet Co., Inc., 2011 WL 320619 at *8 (D.N.H. January 31, 2011) (utilizing the lodestar method in awarding fees under 15 U.S.C. §§ 1117(a) and (b)); Robbins v. Walter E. Jock Oil Co., Inc. (In re Robbins), 2017 WL 946282 at *3 (March 9, 2017) (using the lodestar method to analyze fee award relating to a discharge injunction violation); In re Porter, 399 B.R. 113, 117 (Bankr. D.N.H. 2008) (applying the lodestar method to creditor's claim for attorney fees in a reaffirmation agreement); In re Chase, 2003 WL 22056652 at *2 (Bankr. D.N.H. August 25, 2003) (employing a lodestar analysis in a claim under 11 U.S.C. § 506(b)).

> Ordinarily, the trial court's starting point in fee-shifting cases is to calculate a lodestar; that is, to determine the base amount of the fee to which the prevailing party is entitled by multiplying the number of hours productively expended by counsel times a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S.C. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).  Typically, a court proceeds to compute the lodestar amount by ascertaining the time counsel actually spent on the case 'and then subtract[ing] from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary.' Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984).  The court then applies hourly rates to the constituent tasks, taking into account the 'prevailing rates in the community for comparably qualified attorneys.' United States v. Metropolitan Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988); see also Grendel's Den, 749 F.2d at 955.  Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances. See Blum v. Stenson, 465 U.S. 886, 897, 104 S. Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992).  Only hours that are actual, reasonable, and necessary to the prosecution of the prevailing claims should be included in the calculation.

Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  Hours billed in connection with unsuccessful, alternative theories of recovery should be excluded.  Id. at 434-35.

Even after multiplying reasonable hours times a reasonable rate, courts must still consider other factors, including the degree to which the prevailing party was successful.  See Hensley v. Eckerhart, 461 U.S. at 434-35.  These considerations may lead a court to further adjust the fee award.  Id.  ("There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'").

New Hampshire's state law standard for reasonable attorney fees is similar to the lodestar method.  See generally Wells Fargo Bank, National Ass'n v. Moskoff, 2021 WL 4798102, at *3 (D.N.H. Oct. 14, 2021) (noting the similarity and choosing to apply the lodestar method to an award of attorney fees claimed under a mortgage provision providing the same); In re Taal, 540 B.R. 24, 31 (Bankr. D.N.H. 2015) (same).  New Hampshire courts examine fees using the eight factors listed in the Code of Professional Responsibility as a guide.  See Town of Barrington v. Townsend, 164 N.H. 241, 250, 55 A.3d 952 (2012) (citing, Funtown USA, Inc. v. Town of Conway, 129 N.H. 352, 356, 526 A.2d 882 (1987)).  Those factors are "the amount involved, the nature, novelty, and difficulty of the litigation, the attorney's standing and the skill employed, the time devoted, the customary fees in the area, the extent to which the attorney prevailed, and the benefit thereby bestowed on his clients."  Id.  All of these factors are ones a court must take under consideration in performing a lodestar analysis under federal law.  Accordingly, this court will utilize the lodestar method in determining the fee award under both Counts I and II, while ensuring that the factors found in the Code of Professional Responsibility inform its application of that test.

### III. Ms. Pope's Personal Liability for Fees and Costs

Before analyzing the fees on a more granular level, however, the court must first address a general objection raised by the Defendants. The Defendants contend that the Retainer Agreement is unclear as to whether Ms. Pope is contractually obligated to pay the fees and costs requested in her motion or, in the alternative, whether her attorneys would ever seek to recover those fees and costs from her considering the fact she was awarded just $1.00 in nominal damages. See Genuine Parts Co. v. Autopart Int'l, Inc., No. 200502259, 2010 WL 2764711, at *1 (Mass Super. Ct. May 14, 2010) ("Generally, the court's concern in evaluating contractual fee-shifting provisions is not to assess punitive damages against the unsuccessful party, but rather to enforce the provisions in a manner that makes the successful party whole."); Lincoln St. Realty Co. v. Green, 374 Mass. 630, 632 (1978) (fee award not appropriate where prevailing party was represented by a publicly funded legal services organization).

Both Genuine Parts Co. and Lincoln St. Realty Co. are rulings on fee awards under Massachusetts state law. The Defendants concede that they are not aware of any decisions by New Hampshire courts on this specific issue. Moreover, the fees at issue here are awarded both under state law and under 11 U.S.C. § 362(k) and federal courts are divided over the issue, with no clear guidance in the First Circuit. See Rushmore Loan Management Services v. Moon (In re Moon), 2021 WL 62630, at *4-5 (B.A.P. 9th Cir. Jan. 7, 2021) (holding that prevailing party could recover fees under 11 U.S.C. § 362(k) even in the absence of an unwritten retention agreement laying out the terms of the contingency fee arrangement); Heupel v. Nielsen (In re Nielsen), 2017 WL 57260, at *6 (D. Colo. Jan. 4, 2017) (fees may be awarded notwithstanding a contingency fee agreement because "there is a distinction between a complete lack of responsibility for paying any attorneys' fees . . . and a lack of responsibility for paying fees out

6

of pocket . . ."). C.f. Dean v. Carr (In re Dean), 490 B.R. 662, 670 (Bankr. M.D. Pa. 2013) ("While bankruptcy courts are not in complete agreement on this issue, the better-reasoned decisions deny counsel fees under § 362(k) if the debtor is represented on a *pro bono* basis and will never be personally liable for the fees.").

      A review of the terms of the Retention Agreement leads this court to conclude that Ms. Pope is personally liable for the fees billed in connection with this matter. The agreement provides that payment of the outstanding fees is "contingent upon recovery or successful result." Though it does not specifically define the term "successful result," it is not an unreasonable reach to conclude that the entry of judgment in Ms. Pope's favor on three counts, and the award of $10,000 in damages in connection with the contempt claim, is a success thereby triggering Ms. Pope's obligation to pay the contingency fee. This interpretation is reinforced by the fact that the amount of the fees is the *greater* of one-third of the recovery of damages *or* hourly fees. In other words, the agreement provided for the eventuality—which also happens to be the reality—that Ms. Pope would prevail on liability but lose on damages. Accordingly, upon entry of judgment in her favor, and an award of minimal damages, Ms. Pope became personally liable for the hourly fees incurred in the prosecution of her claims.

      While the court appreciates the Defendants' skepticism that counsel would actually attempt to recover Ms. Pope a contingency fee far exceeding her minimal award, there is nothing before the court to indicate her counsel's willingness to write off any portion of those fees for her benefit. Moreover, the standard is whether Ms. Pope is liable for the fees under the agreement; not whether counsel would forgo those fees.

### IV.    Calculating Reasonable Hours Expended

The court carefully reviewed the fee detail attached to the Fee Motion and identified entries the court found unreasonable, vague, excessive, or unnecessary and those hours were excluded from the lodestar analysis.  Some entries were objectionable on more than one basis.  For example, the billing entry by Mr. Chevalier on November 28, 2018 of "Transfer e-mails from McCandless & Nicholson" is both vague and clerical in nature.  Although the hours associated with that entry were flagged for two objections, the court made certain that they were only deducted from the overall total once.

The overarching problem with the Fee Motion and the attached fee detail, is that, despite the court's specific direction to itemize the costs and fees incurred relating to Counts I and II, Ms. Pope failed to do so.  Although she prevailed on three counts, she is only entitled to attorneys' fees for Counts I and II and her success on those claims was limited.  She failed to establish that she suffered any damage in connection with either count.  Most notably, although she originally asserted damages stemming from emotional distress, the court ruled that she was not entitled to claim any such damages because of her steadfast refusal to testify about those damages on cross-examination.  In addition, Counts IV and VI were stricken or withdrawn and the court entered judgment in favor of the Defendants on Count V.  Ms. Pope's failure to identify the fees billed for prosecution of Counts I and II greatly complicated the court's task of determining which were reasonably incurred in the successful pursuit of those claims.

In all, the court identified the following categories of time entries to be excluded from the lodestar analysis as unnecessary, unreasonable, excessive, or vague.

- **Vagueness.**  The court identified entries totaling **10.4** that were so vague in their description that the court could not identify the nature of the services provided or

how those services related to the successful prosecution of Counts I and II. These hours are excluded in their entirety.

- **Clerical Tasks.** Clerical tasks are a part of a firm's overhead and should not be billed at attorney rates as they require no special knowledge or training. These tasks include: registering for Court Call, processing documents, picking documents up from another office, coordinating calls, processing certified mail, and calendaring deadlines. Excluding time entries that were objectionable on other grounds, the court identified **24.8** hours of clerical entries which were billed at attorney rates.

- **Abandoned Theories, Motions, and Strategies.** Counsel included fees billed in connection with several motions and pleadings that were never filed and/or theories that were apparently abandoned. The court has deducted time billed in connection with researching and developing theories related to "bad acts," which theory was never argued in pleadings or at trial. The court also identified numerous entries related to researching and drafting an amended complaint, a motion for judicial estoppel, and a motion to exclude an expert—none of which appear on the docket in this case. In all, the court excluded **92.0** hours of time related to abandoned theories or strategies.

- **Block Billing/Lumping.** Lumping is a form of block billing in which a large number of unrelated tasks are grouped together under one time entry. In a case where significant time was spent on tasks for which no fees may be awarded, and concerns have been raised about excessive billing, the practice of lumping significantly hinders a court's review of time entries. Lumped entries cloud the

9

ability to determine how much time a timekeeper spent on a particular task, whether the task is related to other tasks in the same entry which are objectionable on other grounds, and which tasks relate to which theory. In all, the court excluded **46.1** hours of lumped time entries.

- **Motion for Summary Judgment.** The court deducted **86.6** hours billed in connection with researching, drafting, and arguing Ms. Pope's unsuccessful motion for summary judgment. While there is a possibility that some portion of the research and drafting associated with the motion for summary judgment informed counsel's preparation for trial on Counts I and II, there is no way for the court to reach that conclusion based on the materials presented in connection with the motion.

- **Motion for Preliminary Injunction.** The court also excluded **7.20** hours billed in connection with a motion for preliminary injunction which Ms. Pope eventually withdrew.

- **Emotional Distress and Other Damages.** The court identified **12.9** hours billed in connection with the development of unsuccessful claims for damages. Although the court suspects that many other entries generally describing trial preparation, development of exhibits, and expert testimony reflect time spent on similar topics, the general nature of those entries makes it impossible to determine this with certainty, and the court has considered this in further reducing the fee award below in Part VI.

- **Motion for Judicial Notice.** Counsel billed **5.6** hours to prepare an unsuccessful motion requesting the court take judicial notice of an amortization schedule developed by Ms. Pope's counsel.

- **Motions in Limine.** Ms. Pope filed four motions in limine in advance of a bench trial; all of which the court denied. Counsel billed **36.8** hours in connection with those motions. All of this time is excluded.

- **Motion for Protective Order.** Likewise, the court deducted **10.1** hours incurred in connection with an unsuccessful motion seeking a protective order.

- **Duplicative Tasks.** The court identified one task billed twice. The duplicative entry, consisting of **0.1** hour, is excluded.

- **Future Representation.** Finally, the court excluded **.30** hours, and $127.50 in fees, describing discussions about future representation of Ms. Pope by Alfano. None of these fees relate to this proceeding and Ms. Pope is not entitled to recover them.

The Fee Motion seeks fees billed for 1,247.4 hours. For the reasons stated here, those hours will be reduced by 332.9 hours, leaving a total of 914.5 hours. Table 1 details the amounts disallowed, the reasons for the disallowances, and the billing firms whose attorneys' time has been disallowed.

**TABLE 1.**

| Reason for Disallowance | McCandless & Nicholson, PLLC | Harman Law Offices | Chevalier Legal Services, PLLC | Alfano Law Office, PPLC | Totals by Reasons for Disallowance |
|---|---|---|---|---|---|
| Vagueness (V) | 0.10 | 3.70 | 3.90 | 2.70 | 10.40 |
| Clerical (C) | 1.50 | 3.20 | 19.70 | 0.40 | 24.80 |
| Abandoned (A) | 0.00 | 2.20 | 59.20 | 30.60 | 92.00 |
| Block Billing/Lumping (BB) | 20.30 | 1.50 | 6.00 | 18.30 | 46.10 |
| Motion for Summary Judgment (MSJ) | 1.10 | 3.00 | 82.30 | 0.20 | 86.60 |
| Motion for Preliminary Injunction (MPI) | 0.00 | 0.00 | 7.20 | 0.00 | 7.20 |
| Emotional Damages (ED) | 0.00 | 0.00 | 0.70 | 0.00 | 0.70 |
| Motion for Judicial Notice (MJN) | 0.00 | 0.00 | 5.30 | 0.30 | 5.60 |
| Damages (DGS) | 0.00 | 2.20 | 10.00 | 0.00 | 12.20 |
| Motion in Limine (MIL) | 0.00 | 0.00 | 30.50 | 6.30 | 36.80 |
| Motion for Protective Order (MPO) | 0.00 | 10.10 | 0.00 | 0.00 | 10.10 |
| Future Representation (FR) | 0.00 | 0.00 | 0.00 | 0.30 | 0.30 |
| Duplicative (D) | 0.00 | 0.10 | 0.00 | 0.00 | 0.10 |
| **Totals** | 23.00 | 26.00 | 224.80 | 59.10 | **332.90** |

### V.  Determining a Reasonable Hourly Rate

Mr. Chevalier contends that the $285.00 hourly rate is reasonable due to the complexity of the litigation and the risks associated with deferring payment under the contingency fee arrangement. While this court does not find this rate to be excessive, there are several factors which lead the court to agree with the Defendants, who urge the court to adopt a lower rate.

Although Mr. Chevalier's standard hourly rate increased by almost 25% over the four-year travel of this case, by its conclusion he was still billing less than the contingency fee rate of $285. Although Mr. Chevalier billed at an hourly rate typical of an experienced litigator, he confessed that he required mentoring and strategic advice from the more experienced Ms. Harman, whose oversight resulted in significantly more fees. Moreover, even with Ms. Harman's assistance, the fee detail evidences numerous false starts relating to several motions and theories, which were eventually jettisoned.

For these reasons, Mr. Chevalier's fees will be multiplied by his standard hourly rate applicable at the time the fees were billed and not the $285/hour contingency fee rate. This lodestar calculation provides the baseline from which to make adjustments. See Table 2.

**TABLE 2.**

| Timekeeper | Hourly Rate | Hours Allowed | Total Fees |
|---|---|---|---|
| Timothy Chevalier | $215.00 | 208.7 | $44,870.50 |
| Timothy Chevalier | $260.00 | 548.6 | $142,636.00 |
| Timothy Chevalier | $275.00 | 26.5 | $7,287.50 |
| Terrie Harmon | $285.00 | 31.3 | $8,920.50 |
| Terrie Harmon | $375.00 | 20.7 | $7,762.50 |
| Terrie Harmon | $425.00 | 46.1 | $19,592.50 |
| Vicki Wentworth | $285.00 | 0.3 | $85.50 |
| Douglas Allen | $280.00 | 30.8 | $8,624.00 |
| Thomas McCarron | $360.00 | 1.5 | $540.00 |
| **Total:** | | **914.5** | **$240,319.00** |

### VI. Adjustments for Other Factors

Having determined that the reasonable fees multiplied by a reasonable rate totals $240,319.00, the court must now analyze other factors, including the nature of the litigation, the novelty of the issues, the extent to which Ms. Pope prevailed, and the benefit bestowed upon her. After considering these factors, the court has identified concerns that militate in favor of a downward adjustment.

- **Damages.** The only winners in this litigation may be counsel for Ms. Pope. Ms. Pope has little to show for four years of litigation and hundreds of thousands of dollars in fees and costs. The court is hard-pressed to see how counsel could have expected any significant recovery considering the minimal economic harm suffered by Ms. Pope and, especially in light of her adamant refusal to answer cross-examination questions about her claim for emotional distress damages—the only claim that could reasonably have anticipated yielding any meaningful recovery. In asserting a claim that she was unwilling to press and for which she did not reveal her unwillingness to do so until the midst of trial, Ms. Pope caused the Defendants to incur additional and unnecessary fees and costs. Accordingly, the court hereby deducts an additional $80,000.00 in fees, reducing the attorney's fee award to $160,319.00.

- **Fee Application.** Ms. Pope seeks nearly $25,000 for fees incurred in connection with the Fee Motion. This is too much. In reviewing the fees associated with preparing the Fee Motion, the court noted several entries devoted to a review of fee applications filed in other matters. Those entries suggest that counsel has limited experience in seeking an award of fees. That inexperience is evident both in the confusing nature of the attachments to the Fee Motion and in the amount of time expended in its preparation. Ms. Harmon indicates that the excessive fees are attributable, at least in part, to a hard drive malfunction which hindered her ability to retrieve billing records. Aside from the concerns that this concession raises regarding the accuracy and contemporaneous nature of at least a portion of the time records, it also suggests that the Defendants, or Ms. Pope, are being

billed for activities that constitute overhead in the purest sense. Clients, or losing parties, cannot be expected to bear the cost for computer malfunctions. Whether the major contributing factor was inexperience or a computer malfunction, 75 hours of time billed mostly at partner level rates is, objectively speaking, excessive. The court therefore reduces these fees by $17,500.00 establishing a fee award of $142,819.00.

The Defendants asked this court to reduce the fee award by eighty percent thereby awarding Ms. Pope $77,994.60. The court disagrees. Such a reduction would be excessive where the Defendants themselves did not always readily cooperate with requests that, if honored, would have resulted in a more efficient administration of the case. Moreover, the court notes that Ms. Pope's counsel have already voluntarily reduced their fees to some extent by omitting paralegal time, accepting lower hourly rates, and waiving certain fees. Accordingly, the court finds a fee award to Ms. Pope in the amount of $142,819.00 to be reasonable and appropriate.

## VII. Costs

Finally, Ms. Pope also seeks compensation for $13,667.80 in costs. Those costs include $800.00 for the services of mediator John Garvey, and $7,622.65 and $1,581.25 in expert witness fees for John Rao, Esq. and Nancy M. Cavalieri, CFE BSC, respectively. The court will deny reimbursement of these costs.

As for the mediation costs, the Defendants note that the parties agreed to share the cost of mediation equally. Courts encourage parties to participate in mediation as a cost-effective and efficient manner for resolving disputes. Unfortunately, the process is not always successful and, in those instances, alternative dispute resolution *adds* to, rather than *limits*, the cost of litigation. It is common practice for parties to share that risk by entering into agreements such as the one

described by the Defendants.  Parties are induced to participate by the knowledge that they will not have to pay anything more than their share of the mediation costs.  The court will not punish the Defendants for willingly participating in a process that had the potential to reduce the costs sustained by all parties.

Turning to the request for payment of her expert witness fees, Ms. Pope encounters two obstacles.  At trial she testified that she did not incur any.  Memorandum of Decision at 33 (citing, Doc. No. 283 at 174:1-25, 175:1-25).  Notwithstanding this testimony, she now seeks reimbursement for fees paid to Mr. Rao and Ms. Cavalieri.  In addition to this inconsistency, the court shares the Defendants' concern that these fees are inappropriately identified as "costs" and are unsupported by any details regarding the terms on which these experts were retained.

Given this, the court concludes that Ms. Pope is only entitled to costs of $3,663.93: $13,667.80 (total requested) - $800 (mediator's fee) - $7,622.65 (Mr. Rao) - $1,581.25 (Ms. Cavalieri).

### VIII.  Conclusion

For the foregoing reasons, Ms. Pope is hereby awarded $142,819.00 in fees and $3,663.93 in costs.

Date:  February 16, 2023

/s/ Peter G. Cary
Peter G. Cary
United States Bankruptcy Judge
District of New Hampshire (by designation)